Judge SiiursoN
delivered tbe opinion of the Court.
In this action, brought by the owner of three slaves against the defendant, who is a justice of the peace, the plaintiff alleged that the defendant had, under color of his office, but, in reality, for the purpose of vexation and oppression, committed said slaves as runaways to the jail of Jefferson county, where they were confined for the space of twenty-four hours, *198 when in fact said slaves had not run away, and he, the plaintiff, resided in Jefferson county, which was known to the defendant.
1. When a slave is brought before a justice of the peace as a runaway slave it is the duty of the justice to determine whether or not he be a runaway, and whether the person apprehending the slave shall deliver him to the owner or to the jailer of the county. (Revised Statutes, 636, in connection with the act of 1798, Stat.Law, 1411.)
The defendant denied in his answer that he had, at the time the slaves were brought before him as runaways, any evidence that they belonged to the plaintiff, or any knowledge of the plaintiff’s place of residence. He alleged that said slaves were brought before him as runaways, by a police officer in and for the city of Louisville; and upon hearing the proof in the cause, it appeared to his satisfaction that they were runaways, and therefore he committed them, as it was his dutjr to do, to the jail of Jefferson- county. He alleged that in this matter he acted in his official capacity, was in the performance of his dut}', and was not actuated in what he did by any malicious motive or feeling, or by any desire tofiarrass or oppress the plaintiff.
The jury having rendered a verdict for the defendant the plaintiff has appealed to this court.
By the Revised Statutes, page 636, it is enacted that “every slave arrested as a runaway shall be “ taken before a justice of the peace, and if there be “ reasonable cause to suspect that such slave is a “ runaway, the justice shall give a certificate, of the “ fact, stating therein the county in which the slave “ was arrested, the name, if known, and description “ of the negro, the name and residence of his mas- “ ter, and the name and residence of the person who- “ apprehended the runaway, and the amount due the “ apprehender, and by his pre.cept endorsed thereon, “ command him to deliver the slave to the jailer of “ his county, or if the owner is resident in the coun- “ ty of the justice to deliver the slave to the owner “ thereof.”
The defendant instead of making out a certificate, and indorsing a precept thereon as required by the statute, issued a mittimus to the jailer, commanding Mm to receive the slaves into his custody and keep *199 them safely until they should be demanded by their owner, or discharged by due course of law.
2. Tho> the warrant issued by the justice, in such case, may not conform literally to the requisitions of the statute, if the omission be not prejudicial or material to the owner of the slave, he cannot complain.
*199 It is contended that in so doing-, he exceeded his authority as a justice of the peace, and has rendered himself liable to the plaintiff in this action. To sustain this position, the foregoing statute is relied upon as requiring the justice before whom a slave is taken, if he have reasonable cause to believe that he is a runaway, to command, by his precept endorsed on the certificate, the apprehender either to deliver the slave to the jailer of his county, or to the owner, if he resides in the county; and that the justice has no power to determine whether the slave shall be committed to jail, or delivered to the owner; but that matter must be left by him to the person who has apprehended the slave.
In this construction of the statute we do not concur. It is the duty of the justice to determine whether or not the slave is a runaway, and also whether the apprehender shall deliver him to the owner, or to the jailer of the county. This, we think, is the true meaning of the statute, and this construction is fortified by a reference to the statute of 1798, (2 Statute Law, page 1411,) which continued in force until the adoption of the Revised Statutes. By that statute it was provided, that if the owner should not be identified to the satisfaction of the justice, he should, by his warrant, commit the runaway to the jail of his county. We cannot perceive any intention on the part of the Legislature to change the law upon this subject, and transfer the decision of this question from the justice of the peace acting in his official capacity, to the person who may apprehend the runaway, and who may be wholly irresponsible.
The warrant issued in this case by the justice was a substantial, although not a formal and literal compliance with the requisitions of the statute. It contained a statement, although imperfect, of the facts which are required by the statute to be embraced in *200 the certificate to be made out by the justice. Its omissions are not prejudicial to the plaintiff, and the statement it contains, that the slaves said they belonged to him, and that he resided in Jefferson county, did not prove that such was the fact, as the statement of the slaves was not competent evidence on the subject, and would not have justified any action by the justice based exclusively thereon. It was not proved that the defendant, at the time the slaves were brought before him as runaways, knew them or their owner, or their place of residence, or' that he$ had any knowledge on the subject, except that which he derived from the information of the slaves themselves. There was no testimony tending to prove that he had any reason to believe that they had not x’un away from their owner; and as they were absent from home without any written permission from their owner — at least none was proved to have been in their possession — and they had been apprehended and brought before him, charged with being runaways, he had an undoubted x-ight to consider and treat them as such.
3. A justice is not bound to regard the statements of a slave apprehended as a runaway as ev idence. Nor ia it admitted that a justice is responsible for an error of judgment incommitting a slave asa tbenTisf no'malieious or improper design.
*200 As the owner had not been identified to his satisfaction, he had a right to order them into the custody of the jailei’, and whether this was done by him in the exact manner prescribed by the statute, by a precept requiring the apprehender to deliver them to the jailer, or by his warrant directed to the jailer himself is not material, as the same effect precisely resulted from the adoption of either mode of accomplishing this object.
And we do not admit that if the justice while acting within the limits of his jurisdiction, had committed amere error of judgment, without any malicious or improper design, that he would have thereby subjected himself to any liability whatever.
Testimony of any information in relation to the slaves that had been given to the persons apprehending them, when the defendant was not present, and *201 of which it did not appear he had any knowledge, was clearly inadmissible against him.
The law of the case as expounded by the court below in its instruction to the jury, is in unison with the principles of this opinion. .
Wherefore, the judgment is affirmed.